# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY (LOUISVILLE)

| | |
|---|---|
| **Gerard Kiley** ) | |
| ) | |
| v. ) | **Civil Action** 3:23-cv-391-BJB |
| ) | |
| **Trax Off-Grid, LLC** ) | |
| ) | |
| **and** ) | |
| ) | |
| **Stephen LeClair** ) | |
| ) | |
| **Kentucky Attorney General** ) | |
| **(Interested Party due to Kentucky** ) | |
| **Consumer Protection Act Claim)** ) | |

## PLAINTIFF'S VERIFIED COMPLAINT

Comes Plaintiff, Gerard Kiley ("Plaintiff"), for his Verified Complaint against Defendants, Trax Off-Grid, LLC ("Trax") and Stephen LeClair ("LeClair") (collectively "Defendants"), states as follows:

## NATURE OF THE ACTION

This action relates to a large military all-purpose machine and vehicle (the "Roamer") purchased by Plaintiff and intended by him to serve primarily as a residence and recreational vehicle as well as, at times, a mobile business office. Separate and aside from its function, the Roamer has been an aspiration of Plaintiff's for years and is of immeasurable value to Plaintiff.

When Plaintiff, a resident of Nevada, sought to have the Roamer custom-tailored for his unique needs, Defendants affirmatively assured Plaintiff that he should entrust the project to their care and so-called expertise, and that they could deliver on Plaintiff's dream within Plaintiff's important timeline, as time was of the essence. As a result of Defendants' inducement, Plaintiff paid $7,000 to have the Roamer shipped across the country to Kentucky.

Unfortunately, Defendants have, at every turn, and for more than one year, knowingly and egregiously made Plaintiff's dream a nightmare. Defendants' egregious and downright fraudulent acts and omissions have deprived Plaintiff of his use and enjoyment of the Roamer for more than one year and, to date, hundreds of thousands of dollars in damages. Worse, Defendants have either taunted or ignored Plaintiff every time Plaintiff has made good faith efforts to simply obtain what he contracted and paid for.

But make no mistake; this is no mere breach of contract case. Defendants have knowingly and intentionally engaged in fraudulent misrepresentations across State lines to siphon money from Plaintiff, violated Kentucky's Consumer Protection Act ("KCPA"), caused extensive damage to the Roamer, denied Plaintiff's numerous requests to inspect and/or recover the Roamer (*his* property) and either ignored or mocked Plaintiff and his counsel's reasonable overtures for dialogue to resolve this matter.

Under these facts, as more fully set forth below, Defendants are not merely liable for monetary damages. Defendants' acts and omissions were designed to cause, and continue to cause Plaintiff mental and emotional anguish and, fortunately, law, equity and this Court provide Plaintiff redress for this misconduct. Defendants should be held accountable and taught that this is not how we do business in Kentucky.

## **PARTIES**

1. Plaintiff, Gerry Kiley, is an individual resident of Las Vegas, Nevada who contracted with Defendants for services performed in Kentucky, as set forth herein.

2. Defendant, Trax Off-Grid, LLC, is a Kentucky Limited Liability Company with its principal office located at 11710 Frank Ave, Louisville, Kentucky 40243 (as reflected in the

Kentucky Secretary of State's records) and/or 6244 Old Lagrange Road, Building B #4, Crestwood, Kentucky 40014 (as reflected on the Contracts referred to herein).

3.  Defendant, Steve LeClair, is the sole member of Trax and is an individual resident of Kentucky (or potentially Missouri, Plaintiff is unsure).

4.  Interested Party, the Kentucky Attorney General, is located in Frankfort, Kentucky and is made a party to this action solely due to allegations that Defendants have violated the Kentucky Consumer Protection Act.

## JURISDICTION/VENUE

5.  This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different States. Plaintiff is a Nevada resident and both Defendants are Kentucky residents (LeClair is potentially a Missouri resident).

6.  Venue is proper in this Court because all acts, omissions and/or injuries complained of herein occurred in Oldham and/or Jefferson County, Kentucky.

## STATEMENT OF FACTS

7.  Plaintiff owns the Roamer in question, a large military-grade vehicle that is suitable for residential, recreational, work and many other purposes. The Fair Market Value of the Roamer in its current condition (before the work requested by Plaintiff) is believed to be approximately $120,000.00.

8.  In early 2022, Plaintiff intended to use the Roamer primarily for residential and recreational uses, but also intended to use a portion of the Roamer for purposes relating to his business, CLO2 Remedies, LLC ("CLO2").

9. At this time, Plaintiff sought highly specialized, expensive services to custom-tailor the Roamer for his intended uses. Plaintiff initially contracted with a company based in Utah, Plan B Supply ("Plan B"), to perform this work. However, time was of the essence to Plaintiff, who needed the work complete by July 2022, and Plan B advised that it could not complete the work until at least December 2022.

10. Plaintiff came into contact with LeClair and Trax. Plaintiff was very clear with LeClair that he needed the custom work completed by July 2022, as he had urgent need to use the Roamer primarily for residential purposes.

11. LeClair acknowledged Plaintiff's need for the work to be done by the end of July 2022.

12. LeClair represented to Plaintiff that Trax had the expertise required to complete the work that Plaintiff requested.

13. LeClair represented to Plaintiff that Trax could and would complete the work on Plaintiff's timeline, by the end of July 2022.

14. Another primary selling point that LeClair made to Plaintiff were representations that he already had all of the necessary equipment for the Roamer work on his premises from a prior cancelled project, and that he would sell Plaintiff these products at a 50% discount.

15. In further efforts to induce Plaintiff to hire Trax for the Roamer work, LeClair and Trax identified a shipping company that specialized in moving oversize equipment and arranged for the Roamer to be transferred from Utah to Kentucky.

16. Plaintiff chose to award the Roamer work to Defendants in reliance upon Defendants' affirmative representations.

17. Plaintiff paid $7,000.00 via his American Express credit card ("AMEX") to ship the Roamer from Utah to Kentucky using Defendants' suggested shipping company.

18. Plaintiff and Trax then entered into a contract for Trax to perform the Roamer work. The Parties entered into the initial work order contract on or about May 9, 2022 ("Contract No. 1") – attached as Exhibit 1 (as is Contract No. 2, referenced below).

19. Trax charged Plaintiff $56,413.37 (including credit card transaction fees) for the work to be done under Contract No. 1.

20. On May 17, 2022, pursuant to Contract No. 1, Plaintiff paid Trax an initial deposit of $25,000 by AMEX, across State lines.

21. Plaintiff then made additional payments to Trax pursuant to the contract of: $4,500.00 on May 23, 2022; $9,837.10 on June 2, 2022; $7,625.00 on June 21, 2022 and $8,000.00 on July 13, 2022. Thus, by July 13, 2022, Plaintiff had paid Trax $54,962.10. The remaining $1,451.27 would be due upon completion of the work.

22. Trax had over two and a half months to complete the Contract No. 1 work to meet Plaintiff's deadline. Unfortunately, Trax could not and did not comply with its representations that the Roamer work would be completed by the end of July 2022. In fact, by the end of July 2022, Trax had completed less than 20% of the work required (and, to date, not much more has been done on the Roamer).

23. This news was difficult for Plaintiff to stomach. Plaintiff had been making plans to vacate his then-residence and was prepared to reside in the Roamer at a savings to him of at least $2,300.00 per month, which Plaintiff would have done but for Trax's refusal and/or inability to comply with its contractual and verbal representations.

24. While Plaintiff was going to reside in the Roamer, he had also done research and discovered that he could lease the Roamer on RVAirBnB for approximately $1,820.00 per week.

25. Worse, Trax's failure to meet the bargained-for deadline derailed an important family moment for Plaintiff. Plaintiff's sister was supposed to fly in from Australia and she, Plaintiff and their dad were going to use the Roamer to travel to New Hampshire to spread the ashes of Plaintiff's recently departed mother. This would have been the first time the family was all together in twelve years and Defendants' misrepresentations and other wrongful conduct caused Plaintiff severe mental and emotional anguish.

26. In an effort to excuse their breach of contract, Defendants represented to Plaintiff that more work would need to be done on the Roamer beyond that envisioned in Contract No. 1.

27. Plaintiff relied on Defendants' representations in this regard.

28. When August 2022 came and went, Plaintiff wanted to memorialize his discussions with Defendants concerning additional work that Defendants claimed needed to be done over and above that set forth in Contract No. 1 ("Contract No. 2").

29. On or about September 12, 2022, the parties entered into Contract No. 2 for that additional work for $6,191.23 – see Contract No. 2 at Exhibit 1.

30. On September 21, 2022, Plaintiff paid Trax an additional $8,000.00, bringing the total of his payments to $62,962.10.

31. Plaintiff allowed a reasonable amount of time to pass and for Trax to complete the work before checking in on Trax's progress.

32. However, Plaintiff was stunned and outraged to learn that Trax's work on the Roamer would actually *not even begin* in earnest until *November 2022* – over three months after Trax led Plaintiff to believe that all work would be *complete*.

6

33. To date, as reflected in Plaintiff's notes on Contract Nos. 1 and 2, Trax has only completed approximately 35% of the work, though Trax has falsely stated otherwise and been paid *in full* since September 21, 2022.  (*See* Contract Nos. 1 and 2 at Exhibit 1).

34. While Trax "doubled-down" and persisted in its misrepresentations, Plaintiff made numerous good faith efforts to simply obtain what he contracted and paid for.  On December 9, 2022, Plaintiff emailed Trax reiterating his intended use of the Roamer as a home and also, at times, to visit his customers while emphasizing the monetary and reputational damage that Trax was causing him:

> *I have communicated continuously to you from day one* (most recently via text on December 2nd) that the Roamer Delivery Date is crucial for me and my business because I am going to use The Roamer to visit my largest customers in Arkansas and 9 of their largest customers, to perform Reset CLO2 product demonstrations, out of the Roamer.
>
> Trax's (FIVE) Roamer delivery cancellations caused me to cancel scheduled sales visits and truly hurt me and my company's reputation with all; and more importantly, I've lost roughly $75,000 in annual product sales to these customers, who are now using a competitor product specifically I was told….. 'BECAUSE THEY DO WHAT THEY
> SAY THEY"RE GOING TO DO'.
>
> So, over the next 5 years, I'm out a minimum $375,000 in revenue, because TRAX didn't deliver when it said it would.

(*See* Exhibit 2, emphasis added).

35. When Trax finally responded to Plaintiff, Trax did not dispute his factual statements, or his mounting damages resulting from Trax's breach of contract and fraudulent misrepresentations.  Instead, in an effort to distract from its breaches of contract, on or about December 13, 2022, Trax drafted and sent Plaintiff a proposed new work order for additional work allegedly needed on the Roamer ("Proposed Contract No. 3" – attached as Exhibit 3).

Worse, Proposed Contract No. 3 purported to demand an additional $14,670.00 from Plaintiff. Plaintiff did not agree, and has never agreed to Proposed Contract No. 3.

36. What's more, Trax disclosed to Plaintiff that its wrongful conduct had resulted in water leakage and damage to the Roamer.

37. Nevertheless, Trax did not bother to cover the Roamer or make *any effort whatsoever* (let alone a *reasonable* effort) to mitigate the damage. Plaintiff complained:

> These attached pictures indicate that no visible external work has been attempted or completed externally on the Roamer since Trax Off-Grid took possession of it on May 20th [2022]. Pictures of Roamer taken 2 weeks prior to its shipment confirm this.
>
> The attached Roamer pictures directly contravene all that you have communicated to me over the last 4 months on project actions performed.
>
> Yet, I have paid Trax Off-Grid over $60,000 for materials and labor. Where is it?
>
> On December 9th you informed me that the Roamer roof was leaking. I asked you to immediately cover it with tarps and/or park it inside to prevent further damage.
>
> I reiterated this important request via email on December 14th, and again on December 15th via voicemail and then by text to your business phone and cell phone. You have not responded to any of these requests on the matter.
>
> Today's pictures of the Roamer roof show that the Roamer roof has not been protected in any way from water, snow or elements. Yet you tell me it's leaking significantly and needs extensive work.
>
> This is professional negligence.

*(See* E-mail to Trax dated December 16, 2022 – attached as Exhibit 4).

38. By this time, Trax's misrepresentations and outright lies (when Trax bothered to respond to Plaintiff at all) were so outrageous, that on December 16, 2022 Plaintiff advised Trax that he had no choice but to conduct all further communications in writing.

39. Acting diligently on this startling revelation, Plaintiff hired a qualified inspector to visit Trax's premises and evaluate the current condition of the Roamer, at a cost of $800.00, and

8

advised Trax several times that his inspector would be visiting Trax in late December (including, but not limited to emails of December 19, 2022 and December 26, 2022).

40. However, in a further act of bad faith, and despite Plaintiff's proper advance notice, Trax denied the inspector access to the Roamer, without justification. Plaintiff confirmed: "This morning, after arriving 30 minutes late to a scheduled Roamer property review, you denied my Authorized representative access to my property (Roamer) after my 6 requests to you, to allow this inspection, went unanswered." (E-mail to Trax dated December 30, 2022 – attached as Exhibit 5).

41. Justifiably upset at Trax's fraudulent conduct, Plaintiff further summarized the highly concerning state of affairs: "I have paid Trax Off-Grid more than $66,000 for this project, which was due on AUGUST 1, 2022. You have not substantially delivered on any of the 5-9-22 and 9-12-22 work orders, despite verbal, text and emails stating that you had completed the work. This is Fraudulent Misrepresentation, Breach of Contract and Credit Card/Wire Fraud. I will hold you accountable." (*Id.*).

42. Ever since December 2022, Trax has maintained exclusive possession of Plaintiff's Roamer, but has failed to do any material work on it and has purposely ignored the overwhelming majority of Plaintiff's admirably respectful overtures.

43. Trax's incompetence, non-compliance and purposeful evasion of Plaintiff became so distressing to Plaintiff that, in January 2023, he personally flew to Kentucky from Nevada to visit Trax's place of business and see his Roamer for himself.

44. Unfortunately, Plaintiff saw for himself what he had feared – that Trax had made no progress of any consequence on the work that Trax said would be complete by July 2022, even though Trax had been paid in full for the work for nearly four months.

45. Plaintiff's trip to Kentucky, necessitated by Trax's breaches of contract and increasingly egregious behavior and fraudulent misrepresentations (including denying access to Plaintiff's retained inspector), cost Plaintiff $2,500.00 more.

46. Shortly after Plaintiff's in-person visit, Trax knew that it had been caught in its numerous breaches of contract and material, fraudulent misrepresentations and attempted, itself and through counsel, to convince Plaintiff to sign a "Settlement Agreement."

47. But, in further egregious conduct, the "Settlement Agreement" misrepresented that Plaintiff still owed $12,079.96 under Contract Nos. 1 and/or 2, and then purported to require Plaintiff to pay $14,670.00 for "additional work" that Trax claimed needed to be done. *See* "Settlement Agreement" – attached as Exhibit 6.

48. Plaintiff did not sign, and has never signed the "Settlement Agreement."

49. These ludicrous demands were expressly contrary to the terms of the existing Contracts and the parties' course of dealing – obvious bad faith. For the six (6) months since that time, Plaintiff has reached out to Trax and its counsel on numerous occasions in efforts to resolve this dispute short of judicial intervention.

50. Plaintiff, desperate to have his Roamer back in some semblance of the form for which he contracted and paid, has even been willing to consider some further work and payments for no other reason than to resolve this dispute, with no meaningful response from Trax.

51. Thus, not only did Trax receive all payments in full for ***work it never did***, Trax then "doubled down" on its breaches of contract and fraud by deceptively trying to convince Plaintiff to pay Trax nearly $27,000.00 more in exchange for ***his*** Roamer.

52. Even then, the "Settlement Agreement" stated that Trax would not even have ***that*** so-called work done for ***seven (7) weeks*** after receipt of these additional "ransom" payments.

53. Plaintiff showed admirable patience in the face of these ongoing bad faith business practices, emailing additional pleas for cooperation on March 20, 2023, March 31, 2023 and May 20, 2023.

54. On March 31, 2023, Plaintiff checked in and advised Defendants *and their lawyer*, Robert Marshall, that he needed the Roamer project completed immediately so that he could reside in it while assisting in the care of his friend in Arizona, who was battling cancer:

> Greetings Gentlemen,
>
> I need to speak with both of you on the phone ASAP regarding my Roamer project.
> I have an emergency.
>
> On Tuesday, I was informed that my closest friend has been diagnosed with cancer and will need significant support through surgeries, chemo and radiation treatments.
>
> I will need my Roamer back as soon as possible so that I can live and work out of it while supporting my friend in Arizona for a few months.
>
> I'm hopeful we can resolve all outstanding project issues and determine next steps, for each of us, in one 30-45 minute call.
>
> *I need to have a settlement/agreement on the Roamer project by mid-next week.*
>
> **Please set up a call with me ASAP to discuss.**
> **I am available at any day/time including this weekend.**

*See* Email dated March 31, 2023 – attached as Exhibit 7 (along with May 20, 2023 Email).

55. Outrageously, not even that plea for help elicited the courtesy of a response. Plaintiff hoped that, with Defendants' counsel involved, at least *counsel* would respond and assist. However, that hope was in vain.

56. On May 20, 2023, Plaintiff made a last plea for cooperation to Defendants and their. counsel:

> As of May 20, 2023, I have not received any responses to any of THE THREE EMAILS (attached) by either of you, to resolve this outstanding matter.
>
> I have been more than reasonable and patient.
>
> Trax off Grid is currently in possession of my $95,000 Truck and $62,900 of American Express payments for services & equipment never completed.
>
> Today, I spoke briefly on the phone with Robert Marshall and lamented that by ignoring & refusing my requests for contract resolution, you are forcing me to chase this down through the KY court system.
>
> I will now hire an attorney. You will both be contacted asap.

(*Id.*).

57. In summary, Trax has utterly failed to comply with even the most basic requirements of the Contracts, has made numerous material misrepresentations to Plaintiff across State lines, has pocketed over $63,000 of Plaintiff's money (paid by AMEX and across State lines), and now holds the Roamer hostage unless Plaintiff pays Trax nearly $27,000.00 more for work that is already covered under the existing Contracts (and fully paid for).

58. Moreover, Plaintiff has already paid for, and Trax has long been in possession of, all materials necessary to complete the work. As yet another example of Trax's incompetent and/or fraudulent conduct, this includes a rear lift gate valued at $3,000.00 which has either gone missing, or which Trax sold. Trax does not appear to know what became of the rear lift gate.[1]

59. Plaintiff is now forced to request this Court's intervention and prays that he be made whole, and that Defendants' egregious conduct be properly punished and deterred.

---

[1] Plaintiff also seeks confirmation that other of his possessions are safe and accounted for, including but not necessarily limited to $3,500.00 worth of 80/20 Aluminum Framing, a $3,000.00 Incinolet toilet and two black leather folding couches worth at least $3,500.00.

## COUNT I – BREACH OF WRITTEN CONTRACT (TRAX)

60. All prior allegations are incorporated as if fully referenced herein.

61. Contract No. 1 and Contract No. 2 are enforceable written contracts.

62. Trax has breached and remains in breach of Contract Nos. 1 and 2 by failing to perform all work required of Trax under said contracts.

63. Plaintiff has fully complied with all obligations under Contract Nos. 1 and 2.

64. Trax's breach of Contract Nos. 1 and 2 have caused Plaintiff to suffer demonstrable monetary damage in excess of $500,000.00, and in amounts to be fully determined at trial.

## COUNT II – BREACH OF ORAL CONTRACT (TRAX)

65. All allegations incorporated as if fully set forth herein.

66. In addition to the above-referenced written contracts, Plaintiff and Trax entered into enforceable oral agreements in relation to the Roamer project.

67. The written contracts do not purport to void or supersede the Parties' other agreements.

68. In exchange for the consideration that Trax charged Plaintiff, which Plaintiff fully paid, Trax was to complete the Roamer project on or before July 31, 2022 and promised Plaintiff that it would do so. Trax has breached this agreement.

69. Trax also promised Plaintiff that it would protect the Roamer from physical and other damage while the Roamer was in Trax's possession, but it has failed to do so and persists in this failure.

70. As a result, Plaintiff has suffered demonstrable monetary damage in excess of $500,000.00, and in amounts to be determined at trial.

### COUNT IIII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

71. All allegations incorporated as if fully set forth herein.

72. As set forth above, the Parties entered into binding, enforceable written and oral contracts in connection with this dispute.

73. In Kentucky, there is an implied covenant of good faith and fair dealing in every contract.

74. This includes, but is not limited to, a duty on the part of Trax to do everything necessary to carry out the terms of the contracts.

75. For the reasons set forth in the Statement of Facts, Trax breached this duty.

76. As a result of Trax's breach, Plaintiff has suffered and will continue to suffer demonstrable monetary damages in excess of $500,000.00, and other damages in amounts to be determined at trial.

### COUNT IV - FRAUDULENT MISREPRESENTATION (TRAX AND LECLAIR)

77. All allegations incorporated as if fully set forth herein.

78. In connection with the Roamer work, as set forth more fully in the Statement of Facts, LeClair, individually and on behalf of Trax, made material misrepresentations to Plaintiff that:

    a. Trax had the expertise to complete all work requested by Plaintiff;

    b. Trax could and would complete the Roamer work by July 31, 2022;

    c. Trax could and would perform all Roamer work requested for the value stated in Contract No. 1;

    d. Trax could and would perform all Roamer work requested for the value stated in Contract No. 2;

  e. Trax would safeguard the Roamer while it was in its possession;

  f. Trax would compensate Plaintiff for any damages to the Roamer caused due to Trax's wrongdoing;

  g. Trax would sell and compensate, or otherwise compensate Plaintiff for the Roamer's missing or damaged rear lift gate;

  h. Throughout Trax's possession of the Roamer, that Trax was making substantial progress toward completing all requested work;

79. These representations by Defendants were false.

80. When made, Defendants knew that these representations were false, or the representations were made recklessly.

81. Defendants made these misrepresentations with the intention of inducing Plaintiff to act.

82. Plaintiff acted in reliance upon the misrepresentations.

83. As a result of Defendants' fraudulent misrepresentations, Plaintiff has suffered and continues to suffer monetary and other damages, including but not limited to severe mental and emotional anguish, which he should recover. Plaintiff should also be awarded punitive damages for Defendants' egregious misconduct as well as all reasonable attorneys' fees, costs and expenses relating to this matter, and all other appropriate legal and equitable relief.

### COUNT V – VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (TRAX)

84. All allegations incorporated as if fully set forth herein.

85. The KCPA, in pertinent part, prohibits Trax from engaging in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" (KRS 367.1701(1)).

86. As demonstrated in the Statement of Facts and Count IV above, Trax has violated this provision of the KCPA, and potentially others.

87. Plaintiff has a private right of action for Trax's violations of the KCPA. *See* KRS 367.220.

88. Plaintiff has suffered and will continue to suffer monetary and other damages as a result of Trax's violations of the KCPA, in amounts to be determined at trial.

89. Pursuant to KRS 367.220(1), "[t]he court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate." Plaintiff seeks punitive damages (in an amount to be determined at trial) for Trax's egregious, knowing, intentional and repeated violations of the KCPA despite Plaintiff's reasonable, good faith efforts to resolve this dispute.

90. Pursuant to KRS 367.220(3), "[i]n any action brought by a person under this section, the court may award, to the prevailing party, in addition to the relief provided in this section, reasonable attorney's fees and costs." Plaintiff seeks all reasonable attorney's fees and costs incurred in connection with this action.

## COUNT VI – NEGLIGENT MISREPRESENTATION (TRAX AND LECLAIR)

91. All allegations incorporated as if fully set forth herein.

92. With respect to the allegations in Count V, at minimum Defendants made such misrepresentations in ignorance of the truth and without reasonable grounds for believing the misrepresentations to be true.

93. As a result, Plaintiff has suffered and will continue to suffer demonstrable monetary damages in excess of $500,000.00, and other damages in amounts to be determined at trial.

## COUNT VII – CONVERSION (LECLAIR AND TRAX)

94. All allegations incorporated as if fully set forth herein.

95. At all times material to this action, Plaintiff had and continues to have legal title to the converted property – the Roamer.

96. Plaintiff had and has the right to possess the Roamer.

97. Defendants have exercised, and continue to exercise dominion over the Roamer so as to deprive Plaintiff of its use and enjoyment.

98. Defendants intended to interfere with Plaintiff's possession of the Roamer by failing to perform the contracted and paid for work and by keeping possession of the Roamer.

99. Plaintiff has demanded that Defendants perform the contracted and paid for work or fully refund his money and return the Roamer, but Defendants have refused.

100. Defendants' acts are the legal cause of Plaintiff's damages set forth herein, including but not limited to the fair market value of the Roamer.

## COUNT VIII – NEGLIGENCE (TRAX)

101. All prior allegations are incorporated as if fully referenced herein.

102. Trax had a duty to safeguard Plaintiff's property – the Roamer – while it has been in Trax's possession for more than one year.

103. Plaintiff failed to exercise reasonable care to safeguard the Roamer.

104. Plaintiff's failure to exercise reasonable care has directly caused damage to the Roamer.

105. As a result, Plaintiff is entitled to recover monetary damages and mental and emotional anguish, in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Gerard Kiley, respectfully requests the following relief:

1. Judgment in his favor on all Counts/Claims/Causes of Action;

2. Trial by jury;

3. Monetary damages in excess of $500,000.00, or in an amount to be determined at trial;

4. Punitive damages in excess of $2,000,000.00 or in an amount to be determined at trial;

5. All reasonable attorneys' fees, costs and expenses relating to this action; and

6. All other appropriate relief, at law and equity.

          Respectfully submitted,

          */s/ Jared A. Cox*
          Jared A. Cox, Esq.
          Cox Legal & Consulting, LLC
          14921 Landmark Drive
          Louisville, Kentucky 40245
          Email: jared@coxlegal.org
          Phone: 859-948-7564
          COUNSEL FOR PLAINTIFF

## VERIFICATION

I, Gerard Kiley, hereby swear and affirm that the facts set forth in this Verified Complaint are true and correct to the best of my knowledge and belief.

_____
GERARD KILEY

STATE OF NEVADA           )
                          )
COUNTY OF _____   )

I swear and affirm that Gerard Kiley duly executed the foregoing before me this ____ day of July, 2023.

_____
NOTARY PUBLIC

**EXECUTED AND NOTARIZED COPY ATTACHED AS EXHIBIT 8**

**CERTIFICATION**

I hereby certify that I e-filed the foregoing with the United States District Court for the Western District of Kentucky on this 30th day of July, 2023.

*Jared A. Cox*

Jared A. Cox, Esq.
COUNSEL FOR PLAINTIFF